UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :

        -v.-                              :

                                   11 Cr. 487 (RJS)

GREGORY REED,                         :
    a/k/a "Sharkey,"

                                  :

           Defendant.

                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

PREET BHARARA
*United States Attorney*
*Southern District of New York*
*Attorney for the United States*
*of America*

TODD BLANCHE
NOLA B. HELLER
Assistant United States Attorneys,
*Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                :

          -v.-                              :

                                             11 Cr. 487 (RJS)

GREGORY REED,                           :
    a/k/a "Sharkey,"

                         :

            Defendant.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

**I.  PRELIMINARY STATEMENT**

The United States of America, through its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this sentencing memorandum in advance of the sentencing of defendant Gregory Reed, a/k/a "Sharkey," ("Reed"), which is scheduled for January 15, 2012, at 4:30 p.m.  The Government respectfully requests that the Court sentence Reed to a term of life imprisonment.

A sentence of life imprisonment would be sufficient, but not greater than necessary, to account for the factors set forth at Title 18, United States Code, Section 3553(a).  Most significant among the Section 3553(a) factors is the role that Reed played in the attempted robbery that led to the senseless murder of Bernardo Garcia.  Reed led the two other robbers into the lobby of the apartment building, pulled out his gun, and discharged it as one of his intended victims tried to run away, while one of Reed's co-conspirators, John Johnson, discharged his gun, killing Bernardo Garcia.  In addition to accounting for the seriousness of the offense and Reed's role in the offense, a sentence of life imprisonment is necessary to punish and protect the public from Reed, who has shown no respect for the law, no ability to be deterred, and no ability to be rehabilitated.

## II. BACKGROUND

### A. The Offense Conduct

As the Court is aware from the trial in this case, and as detailed in the pre-sentence investigation report dated November 29, 2012, (the "PSR"), the evidence at trial established that, on December 1, 2007, Reed, John Johnson, Ronnie Gonzalez, and Donnell Richardson participated in an attempted armed robbery inside of the lobby of 1275 Lafayette Avenue in the Bronx, New York (the "Building"), which resulted in the murder of Bernardo Garcia.

#### 1. Richardson Moves Into the Building

As the PSR describes, in the fall of 2007, Donnell Richardson moved into an apartment inside of the Building. (PSR ¶ 11). After Richardson moved to the Building, he noticed a thriving narcotics organization being run by young men in and around the lobby area of the Building. (PSR ¶ 11). In the months thereafter, Richardson got into a dispute with one of the workers for the drug organization because that worker had failed to pay Richardson for marijuana Richardson had provided to him. (PSR ¶ 11). Richardson started discussing the dispute with Luis Navarro, one of the men who ran the narcotics organization in the Building. Richardson told Navarro that Navarro should pay Richardson for the marijuana because the worker who had failed to pay him worked for Navarro. (PSR ¶ 11). Navarro refused.

#### 2. Richardson Plans to Rob the Drug Crew

On December 1, 2007, Richardson decided that he would rob the organization of its drugs and try to scare its members away, so that he could take over the spot in and around the Building. (PSR ¶ 11). Richardson did not want to do the robbery himself because he lived in the Building and he was concerned that he would be recognized. (PSR ¶ 11). Instead, Richardson recruited

Ronnie Gonzalez and Gregory Reed, two men he had known for many years.  Indeed, prior to the attempted robbery, Richardson recruited Reed to help him settle a different dispute in the vicinity of the Building involving a Bloods gang member.  (PSR ¶ 11).  On that occasion, Reed had used a gun and provided back-up while Richardson talked to the Bloods gang member and settled the dispute.  (PSR ¶ 11).

Thereafter, on the morning of December 1, 2007, Richardson drove to the vicinity of Courtlandt Avenue in the Bronx to have a discussion with Gregory Reed and Ronnie Gonzalez about recruiting them to help with the robbery.  (PSR ¶ 13).  Reed and Gonzalez agreed to help, and Richardson agreed to return later in the day to formalize the plan.  (PSR ¶ 13).  Then, in the early afternoon, Richardson returned to Courtlandt Avenue and again met with Reed and Gonzalez.  (PSR ¶ 13).  At that time, Reed told Richardson that a third man, later identified as John Johnson, would be helping commit the robbery as well.  (PSR ¶ 13).  Reed had a gun, and the three robbers agreed with Richardson to follow Richardson in his car to the Hunts Point area of the Bronx, where the Building was located.  (PSR ¶ 13).  Then, in the late afternoon of December 1, 2007, Reed, Gonzalez, Johnson, and Richardson met several blocks away from the Building.  (PSR ¶ 13).  During this meeting, Richardson explained to them that the victims would be in the lobby, and told them that the victims were young, and would probably run away when they entered the lobby.  (PSR ¶ 13).  All three men (Reed, Gonzalez, and Johnson) indicated that they understood the plan.  (PSR ¶ 13).  Reed told Richardson that he wanted him to go and get another gun, so that Johnson could have a gun during the robbery.  (PSR ¶ 13).  Richardson agreed, returned to his apartment in the Building and got a gun for Johnson.  (PSR ¶ 13).  Richardson then met the three other robbers on a street near the Building, and gave Reed the gun for Johnson to use.  (PSR ¶ 13).

### 3.      The Attempted Robbery

Thereafter, Richardson parked his car across the street from the Building, and the three robbers went into the Building.  (PSR ¶ 14).  Reed went in first, followed by Johnson.  (PSR ¶ 14). Gonzalez went into the courtyard of the Building, but stood guard at the door of the Building without going in.  (PSR ¶ 14).  When Reed entered the lobby of the Building, there were at least two individuals inside the lobby, Bernardo Garcia (the victim) and Navarro.  (PSR ¶ 14).  Navarro saw Reed come in, and took off running towards the stairs of the Building.  (PSR ¶ 14).  Reed fired his gun in an apparent attempt to stop Navarro from running.  (PSR ¶ 14).  As Navarro continued to run, he heard more gun shots. (PSR ¶ 14).  What Navarro heard was Johnson shooting his gun at Garcia, killing him.  (PSR ¶ 14).

### 4.      The Robbers Attempt to Cover Their Tracks

After the three robbers ran away from the Building, got into their car, and escaped.  (PSR ¶ 15).  The day after the murder, Richardson and Reed went to Glenn Island and threw away both of the guns that were used in the murder.  (PSR ¶ 15).  During the course of the investigation, members of the FBI dive team recovered the guns, after Richardson told the FBI where he and Reed had thrown them.  (PSR ¶ 14).

### 5.      The Evidence at Trial

At trial, the Government called as witnesses, among others: Richardson; Luis Navarro; a civilian eyewitness who was outside and saw three men who matched the description of the robbers enter the courtyard of the Building, and then run out a minute later; several members of law enforcement; and a medical examiner, who confirmed that Garcia was killed by a single gunshot wound.

**B.    Procedural History**

On June 6, 2011, a grand jury in this district returned an indictment against Gregory Reed, John Johnson, and Ronnie Gonzalez.  The indictment contained three counts.  Count One charged all three defendants with conspiring to commit a Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951.  Count Two charged all three defendants with attempted Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951.  Count Three charged all three defendants with using a gun during and in furtherance of the robbery conspiracy and attempted robbery ,and that the use of the gun resulted in the death of Bernardo Garcia, in violation of Title 18, United States Code, Sections 924(j) and 2.  Trial commenced on June 11, 2012 and lasted 11 days.  On June 26, 2012, after less than two days of deliberations, all three defendants were convicted of all three counts in the indictment.

**C.    The Presentence Investigation Report**

On November 29, 2012, the Probation Office issued its Presentence Investigation Report in this case.  The PSR concluded that the offense conduct yielded a base offense level of 43, a Criminal History Category of VI, because Reed is not only a career offender, but because he independently has 15 criminal history points.  (PSR ¶¶ 22-62).  The Probation Office recommended Guidelines sentence of life imprisonment.  (*See* PSR page 19 (sentencing recommendation)).  The Probation Office made its recommendation because this conviction represents "the defendant's 12th conviction . . . Reed has been previously incarcerated and ordered to serve custodial terms of up to 7 years . . [and] [a]pparently, Reed has no respect for the law or regard for the possible loss of life.  (PSR page 20).  Moreover, given the instant offense, and

Reed's role in the instant offense, probation recommends that Reed be sentenced to life imprisonment.  (PSR page 20).

### D.      Status of Co-Defendants

Reed's convicted co-defendants, John Johnson and Ronnie Gonzalez, a/k/a "Satan," are scheduled to be sentenced before the Court over the course of the next two weeks.  Reed is the first defendant scheduled to be sentenced for these offenses.

### III.  ARGUMENT

### A.      The Governing Legal Framework

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. at 264.  As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall* v. *United States*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita* v. *United States*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

**B.     The Court Should Impose a Sentence of Life Imprisonment**

In the present case, a sentence of life imprisonment is sufficient, but not greater than necessary, to comply with the purposes of sentencing.  Consideration of several of the Section 3553(a) factors, in addition to the advisory Guidelines, warrants a sentence of life imprisonment. The Section 3553(a) factors most applicable in this case include the nature and circumstances of the offense, the seriousness of the offense, the need to provide just punishment, the need to promote respect for the law, the need to afford adequate deterrence to criminal conduct, and the history and characteristics of this defendant.

**1.     The Advisory Guidelines Range**

The Guidelines reflect the considered judgment of the Sentencing Commission, after examining "tens of thousands of sentences and work[ing] with the help of many others in the law enforcement community over a long period of time" in an effort to fulfill the same objectives set out in Section 3553(a).  *Rita*, 551 U.S. at 349.  The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice," and accordingly, the Guidelines "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."  *Id.*

In this case, the correct Guidelines calculation yields the advisory range of life imprisonment, as set forth in the PSR, and without objection by Reed.  That range is arrived at as follows:

**Counts One, Two, and Three**

- The applicable guideline for Counts One and Two (conspiracy to commit robbery and attempted robbery) is U.S.S.G. § 2B3.1.  Section 2B3.1(c)(1), however, indicates that if a victim was killed under circumstances that constitute murder

under Title 18, United States Code, Section 1111, U.S.S.G. § 2A1.1 applies.

2D1.1(c)(1). Pursuant to U.S.S.G. § 2A1.1(a), the base offense level is 43, because

death resulted from the commission of a qualifying felony – a robbery. *See*

U.S.S.G. § 2A1.1(a), app. note 1. Moreover, Reed is not entitled to any downward

departures based upon the manner of Garcia's death during the attempted robbery.

- The applicable Guideline for Count Three is U.S.S.G. § 2A1.1, and calls for a base
  offense level of 43.

- Because Reed proceeded to trial, he is not entitled to any reductions under U.S.S.G.
  § 3E.1.

- The resulting offense level is 43.

- Reed is a career offender, based upon the following: the instant offense if a felony
  crime of violence, and Reed has at least two prior felony convictions of either a
  crime of violence or a controlled substance offense. The result is that Reed is
  placed in criminal history category VI. (*See* PSR ¶ 62).

- Separate and apart from being a career offender under the Sentencing Guidelines,
  Reed has 14 criminal history points, *see* PSR ¶¶ 35-61, and is therefore in criminal
  history category VI even before Reed receives career offender treatment.[1]

- With an offense level of 43, and Criminal History Category of VI, Reed's advisory
  Guidelines sentence is life imprisonment.

---

[1] Reed's submission correctly points out that the PSR incorrectly assigned one criminal history point to Reed based upon his 2000 conviction for disorderly conduct. The Government does not contest this, and agrees that Reed has 14 criminal history points, not 15.

**2.      The Nature and Seriousness of the Offense, and the Need To Provide Just Punishment**

Most fundamentally, the "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), strongly weigh in favor of a sentence of life imprisonment. Murder – the taking of another human's life – is the most serious of crime in our society. Reed committed first degree murder during an attempted robbery. Reed, for his part, was not only an active participant in the attempted robbery – he led the effort. He agreed with Richardson without hesitation to rob young men dealing crack cocaine to earn a quick profit from the sale of what was expected to be a relatively insignificant quantity of drugs and United States currency. Reed brought his gun to the robbery, and demanded that Richardson obtain a second gun. He led the three robbers into the Building, pulled out his gun, and fired it when Luis Navarro tried to run away. His actions led to Johnson firing his gun, which caused Garcia's death.

Reed claims that he "did not intend to harm anyone and he did not anticipate that anyone would be harmed or killed" during the attempted robbery. (Reed Sent. Sub. at 4). This claim is meritless. As noted, Reed brought a loaded gun to the attempted robbery, directed Richardson to retrieve another loaded gun so that Johnson, a man Reed recruited, would also be armed, and fired first when he burst into the lobby of the Building. These are not the actions of a man who did not want anyone to be harmed. To the contrary, Reed's actions directly led to Garcia's murder, and but for Reed's conduct – taking a gun to the robbery, asking Richardson to get a second gun for Johnson, and pulling his gun and firing it at Luis Navarro when he entered the lobby – Garcia likely would still be alive today. Hence, while Reed did not pull the trigger on the gun that killed Garcia, he is just as responsible as Johnson for Garcia's death. The Court should reject his attempts to minimize his role and his claim that he did not intend for violence to take place during

the robbery.  Based upon the nature and circumstances of the offense alone, Reed should be sentenced to a term of life imprisonment.

> **3.     The Need to Promote Respect for the Law, and the Need to Afford Adequate Deterrence**

A term of life imprisonment will also promote respect for the law and ensure that Reed never has the opportunity to commit another crime.  Such a term will also provide general deterrence to others.  Reed has shown an inability to be rehabilitated.  Putting aside the numerous minor convictions where Reed appears to have received leniency, Reed was also sentenced to a lengthy term of imprisonment after he raped a woman in the Bronx, New York.  (*See* PSR ¶¶ 50, 51).  When he was released from this seven-year sentence in 2007, he immediately started committing crimes again.  (*See* PSR ¶¶ 53 - 58).  Indeed, in the middle of his most recent crime spree, he committed the instant offense and murdered Bernardo Garcia.  Reed has failed to respect the law and has knowingly and repeatedly broken the law on countless occasions throughout his life.

For this reason, Reed must be stopped.  In the Government's view, Reed has lost the right to live in our society.  Reed argues that a sentence of twenty years imprisonment will allow him to have the opportunity to rejoin his family, claiming that there "is no reason to think that he would not be able to turn his life around . . . ."  (Sent. Sub. at 6).  The Government disagrees.  There are many reasons to believe that Reed will not turn his life around – most importantly, his background, his repeated criminal conduct, and his inability to be deterred no matter the punishment.  Even after he participated in the instant offense, Reed still continued to commit crimes, as evidenced by testimony at trial and by the PSR.  Therefore, there is absolutely *no* evidence that Reed will ever be deterred from criminal conduct, and every reason to believe that if he is given another break,

this time from this Court, he will serve his time and then continue to commit crimes after he is released from prison.

Further, as a more general matter, the sentence should provide deterrence for others who, like Reed, may consider committing armed robberies and firearms offenses in the Bronx and around the country. Indeed, while many robbers believe that robbing other drug dealers will not draw the attention of law enforcement, this case, Reed's conviction, and a sentence of life imprisonment will give other robbers pause when they consider whether to commit a robbery.

### 4. The History and Characteristics of the Defendant

For many of the reasons discussed above, the history and characteristics of this defendant do not counsel in favor of a lenient sentence. Reed is a lifelong criminal who has no excuses for his inveterate criminal ways. His upbringing, while tragic in some respects, does not excuse his conduct in this case, especially considering he has had numerous opportunities to change his life and make better choices. Every time Reed interacted with the criminal justice system, it appears he left it undeterred and continued his criminal ways. The instant offense does not in any way appear to be an aberration from an otherwise lawful life. To the contrary, the instant offense appears to be consistent with the way Reed has lived his life.

### 5. The Absence of Unwarranted Sentencing Disparities

It also bears noting that a Guidelines sentence in this case would not create "unwarranted disparities among defendants." 18 U.S.C. § 3553(a)(6). While none of the participants in this case has been sentenced yet, all three of the convicted robbers face Guidelines sentences of life imprisonment. Reed's role, as discussed herein, makes him as culpable as any of his co-

defendants.  His role, combined with his criminal history and background, puts Reed squarely in the heartland of a Guidelines sentence of life imprisonment.

## IV.  CONCLUSION

For the reasons set forth above, the Government respectfully submits that the Court should impose a sentence of life imprisonment.

Dated:       New York, New York
              January 8, 2013

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

By:    ____s/_____
        Todd Blanche
        Nola B. Heller
        Assistant United States Attorneys
        (212) 637-2494/2631

**<u>Certificate of Service</u>**

I, Todd Blanche, declare that I am employed in the Office of the United States Attorney for

the Southern District of New York, and on January 8, 2013, I caused a copy of the attached

Sentencing Memorandum of the United States of America to be served by electronic notification to

the following counsel:

> Jeremy Schneider, Esq.
> 100 Lafayette Street, Ste. 501
> New York, New York 10013

I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28

U.S.C. Section 1746.

Dated:      New York, New York
            January 8, 2013

____/s_____
Todd Blanche
Assistant United States Attorney
(212) 637-2494
