UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

              -v.-                          :

                                                        11 Cr. 487 (RJS)

JOHN JOHNSON,                               :

              Defendant.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**


                                        PREET BHARARA
                                        *United States Attorney*
                                        *Southern District of New York*
                                        *Attorney for the United States*
                                        *of America*


TODD BLANCHE
NOLA B. HELLER
Assistant United States Attorneys,
*Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

             -v.-                                    :

                                               11 Cr. 487 (RJS)

JOHN JOHNSON,                               :

             Defendant.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

**I. PRELIMINARY STATEMENT**

The United States of America, through its attorney Preet Bharara, United States Attorney

for the Southern District of New York, respectfully submits this sentencing memorandum in

advance of the sentencing of defendant John Johnson ("Johnson"), which is scheduled for January

16, 2012, at 4:30 p.m.[1]  The Government respectfully requests that the Court sentence Johnson to a

term of life imprisonment.

A sentence of life imprisonment would be sufficient, but not greater than necessary, to

account for the factors set forth at Title 18, United States Code, Section 3553(a).  Most significant

among the Section 3553(a) factors is the role that Johnson played in the murder of Bernardo

Garcia.  Namely, Johnson was the robber who killed Garcia, pulling his gun and discharging it at

Garcia, who was unarmed and defenseless as he sat in the lobby of 1275 Lafayette Avenue in the

Bronx, New York.  In addition to accounting for the seriousness of the offense and Johnson's  role

---

[1] Bernardo Garcia's mother, Evelyn Garcia, intends on attending Johnson's sentencing.  Ms.
Garcia also respectfully requests permission to address the Court as it relates to Johnson's
sentence.

in the offense, a sentence of life imprisonment is necessary to punish Johnson and to protect the public from Johnson, who is a murderer who has shown no respect for the law.

## II. BACKGROUND

### A.    The Offense Conduct

As the Court is aware from the trial in this case, and as detailed in the pre-sentence investigation report dated November 29, 2012, (the "PSR"), the evidence at trial established that, on December 1, 2007, Gregory Reed, Johnson, Ronnie Gonzalez, and Donnell Richardson participated in an attempted armed robbery inside of the lobby of 1275 Lafayette Avenue in the Bronx, New York (the "Building"), which resulted in the murder of Bernardo Garcia.

### 1.    Richardson Moves Into the Building

As the PSR describes, in the fall of 2007, Donnell Richardson moved into an apartment inside of the Building.  (PSR ¶ 11).  After Richardson moved to the Building, he noticed a thriving narcotics organization being run by young men in and around the lobby area of the Building.  (PSR ¶ 11).  In the months thereafter, Richardson got into a dispute with one of the workers for the drug organization because that worker had failed to pay Richardson for marijuana Richardson had provided to him. (PSR ¶ 11).  Richardson started discussing the dispute with Luis Navarro, one of the men who ran the narcotics organization in the Building.  Richardson told Navarro that Navarro should pay Richardson for the marijuana because the worker who had failed to pay him worked for Navarro. (PSR ¶ 11).  Navarro refused.

### 2.    Richardson Plans to Rob the Drug Crew

On December 1, 2007, Richardson decided that he would rob the organization of its drugs and try to scare its members away, so that he could take over the spot in and around the Building.

-2-

(PSR ¶ 11).  Richardson did not want to do the robbery himself because he lived in the Building and he was concerned that he would be recognized.  (PSR ¶ 11).  Instead, Richardson recruited Ronnie Gonzalez and Gregory Reed, two men he had known for many years.  Indeed, prior to the attempted robbery, Richardson recruited Reed to help him settle a different dispute in the vicinity of the Building involving a Bloods gang member.  (PSR ¶ 11).  On that occasion, Reed had used a gun and provided back-up while Richardson talked to the Bloods gang member and settled the dispute.  (PSR ¶ 11).

Thereafter, on the morning of December 1, 2007, Richardson drove to the vicinity of Courtlandt Avenue in the Bronx to have a discussion with Gregory Reed and Ronnie Gonzalez about recruiting them to help with the robbery.  (PSR ¶ 13).  Reed and Gonzalez agreed to help, and Richardson agreed to return later in the day to formalize the plan.  (PSR ¶ 13).  Then, in the early afternoon, Richardson returned to Courtlandt Avenue and again met with Reed and Gonzalez.  (PSR ¶ 13).  At that time, Reed told Richardson that a third man, later identified as John Johnson, would be helping commit the robbery as well.  (PSR ¶ 13).  Reed had a gun, and the three robbers agreed with Richardson to follow Richardson in his car to the Hunts Point area of the Bronx, where the Building was located.  (PSR ¶ 13).  Then, in the late afternoon of December 1, 2007, Reed, Gonzalez, Johnson, and Richardson met several blocks away from the Building.  (PSR ¶ 13).  During this meeting, Richardson explained to them that the victims would be in the lobby, and told them that the victims were young, and would probably run away when they entered the lobby.  (PSR ¶ 13).  All three men (Reed, Gonzalez, and Johnson) indicated that they understood the plan.  (PSR ¶ 13).  Reed told Richardson that he wanted him to go and get another gun, so that Johnson could have a gun during the robbery.  (PSR ¶ 13).  Richardson agreed, returned to his apartment in

the Building and got a gun for Johnson.  (PSR ¶ 13).  Richardson then met the three other robbers on a street near the Building, and gave Reed the gun for Johnson to use.  (PSR ¶ 13).

### 3.      The Attempted Robbery

Thereafter, Richardson parked his car across the street from the Building, and the three robbers went into the Building.  (PSR ¶ 14).  Reed went in first, followed by Johnson.  (PSR ¶ 14). Gonzalez went into the courtyard of the Building, but stood guard at the door of the Building without going in.  (PSR ¶ 14).  When Reed entered the lobby of the Building, there were at least two individuals inside the lobby, Bernardo Garcia (the victim) and Navarro.  (PSR ¶ 14).  Navarro saw Reed come in, and took off running towards the stairs of the Building.  (PSR ¶ 14).  Reed fired his gun in an apparent attempt to stop Navarro from running.  (PSR ¶ 14).  As Navarro continued to run, he heard more gun shots. (PSR ¶ 14).  What Navarro heard was Johnson shooting his gun at Garcia, killing him.  (PSR ¶ 14).

### 4.      The Robbers Attempt to Cover Their Tracks

After the three robbers ran away from the Building, got into their car, and escaped.  (PSR ¶ 15).  The day after the murder, Richardson and Reed went to Glenn Island and threw away both of the guns that were used in the murder.  (PSR ¶ 15).  During the course of the investigation, members of the FBI dive team recovered the guns, after Richardson told the FBI where he and Reed had thrown them.  (PSR ¶ 14).

### 5.      The Evidence at Trial

At trial, the Government called as witnesses, among others: Richardson; Luis Navarro; a civilian eyewitness who was outside and saw three men who matched the description of the robbers enter the courtyard of the Building, and then run out a minute later; several members of

law enforcement; and a medical examiner, who confirmed that Garcia was killed by a single gunshot wound.

**B.      Procedural History**

On June 6, 2011, a grand jury in this district returned an indictment against Gregory Reed, John Johnson, and Ronnie Gonzalez.  The indictment contained three counts.  Count One charged all three defendants with conspiring to commit a Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951.  Count Two charged all three defendants with attempted Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951.  Count Three charged all three defendants with using a gun during and in furtherance of the robbery conspiracy and attempted robbery ,and that the use of the gun resulted in the death of Bernardo Garcia, in violation of Title 18, United States Code, Sections 924(j) and 2.  Trial commenced on June 11, 2012 and lasted 11 days.  On June 26, 2012, after less than two days of deliberations, all three defendants were convicted of all three counts in the indictment.

**C.      The Presentence Investigation Report**

On November 29, 2012, the Probation Office issued its Presentence Investigation Report in this case.  The PSR concluded that the offense conduct yielded a base offense level of 43, a Criminal History Category of III.  (PSR ¶¶ 22-44).  The Probation Office recommended Guidelines sentence of life imprisonment.  (*See* PSR page 16 (sentencing recommendation)).  The Probation Office made its recommendation because "Johnson's actions in the instant offense caused the loss of human life."  (PSR page 17).

**D.      Status of Co-Defendants**

Johnson's convicted co-defendants, Gregory Reed, a/k/a "Sharkey," and Ronnie Gonzalez, a/k/a "Satan," are scheduled to be sentenced before the Court over the course of the next two weeks.  The Government is seeking and asking that the Court impose a sentence of life imprisonment for all three convicted defendants.

## III.  ARGUMENT

**A.      The Governing Legal Framework**

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. at 264.  As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).

-6-

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

 (B) to afford adequate deterrence to criminal conduct;

 (C) to protect the public from further crimes of the defendant; and

 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall* v. *United States*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita* v. *United States*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

**B.      The Court Should Impose a Sentence of Life Imprisonment**

In the present case, a sentence of life imprisonment is sufficient, but not greater than necessary, to comply with the purposes of sentencing.  Consideration of several of the Section 3553(a) factors, in addition to the advisory Guidelines, warrants a sentence of life imprisonment for Johnson.  The Section 3553(a) factors most applicable in this case include the nature and circumstances of the offense, the seriousness of the offense, the need to provide just punishment, the need to promote respect for the law, the need to afford adequate deterrence to criminal conduct, and the history and characteristics of this defendant.

**1.      The Advisory Guidelines Range**

The Guidelines reflect the considered judgment of the Sentencing Commission, after examining "tens of thousands of sentences and work[ing] with the help of many others in the law enforcement community over a long period of time" in an effort to fulfill the same objectives set out in Section 3553(a).  *Rita*, 551 U.S. at 349.  The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice," and accordingly, the Guidelines "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."  *Id.*

In this case, the correct Guidelines calculation yields the advisory range of life imprisonment, as set forth in the PSR, and without objection by Johnson.  That range is arrived at as follows:

**Counts One, Two, and Three**

- The applicable guideline for Counts One and Two (conspiracy to commit robbery and attempted robbery) is U.S.S.G. § 2B3.1.  Section 2B3.1(c)(1), however, indicates that if a victim was killed under circumstances that constitute murder

under Title 18, United States Code, Section 1111, U.S.S.G. § 2A1.1 applies.

2D1.1(c)(1).  Pursuant to U.S.S.G. § 2A1.1(a), the base offense level is 43, because

death resulted from the commission of a qualifying felony – a robbery.  *See*

U.S.S.G. § 2A1.1(a), app. note 1.  Moreover, Johnson is not entitled to any

downward departures based upon the manner of Garcia's death during the attempted

robbery.

- The applicable Guideline for Count Three is U.S.S.G. § 2A1.1, and calls for a base

  offense level of 43.

- Because Johnson proceeded to trial, he is not entitled to any reductions under

  U.S.S.G. § 3E.1.

- The resulting offense level is 43.

- Johnson has four criminal history points, based upon three prior narcotics-related

  offenses.  The result is that Johnson is placed in Criminal History Category III.  (*See*

  PSR ¶ 44).[2]

- With an offense level of 43, and Criminal History Category of III, Johnson's

  advisory Guidelines sentence is life imprisonment.

**2.    The Nature and Seriousness of the Offense, and the Need To Provide Just Punishment**

The most significant factor weighing in favor of a sentence of life is the "nature and

circumstances of the offense," 18 U.S.C. § 3553(a)(1).  Murder – the taking of another human's

---

[2] Johnson's submission correctly points out that the PSR incorrectly assigned one criminal history point to Johnson based upon his October 29, 2009 conviction for trespassing.  The Government does not contest this, and agrees that Johnson 4 criminal history points, 5.

life – is the most serious of crime in our society.  Johnson is a murderer.  During the attempted robbery, Johnson pulled out his gun, pointed it at Bernardo Garcia, and pulled the trigger.  There is no evidence that Garcia struggled with Johnson, or that Garcia did anything to threaten Johnson.  Rather, the evidence was that when Reed burst into the lobby of the Building, Reed pulled out his gun and fired in an effort to keep Luis Navarro from running away.  Johnson, in what can only be called a callous disregard for another man's life, then pulled out his gun and pulled the trigger, killing Garcia.

Johnson does not provide *any* explanation for his actions in this case.  He provides no apology, he provides no justification, and he provides no excuse.  In his sentencing submission, Johnson relies on the fact that he was a last-minute recruit to the robbery, and that none of the robbers wanted anyone to be killed.  (Johnson Sentencing Memorandum at 3.)  The unremarkable fact that neither Richardson nor Reed wanted Johnson to murder Garcia does not mitigate in any way what Johnson chose to do.  Johnson chose to pull the trigger.  Johnson chose to kill.  While the law does not require Johnson to provide an explanation or to accept responsibility for his murder, a complete lack of explanation or acceptance of responsibility by Johnson counsels in favor of a Guidelines sentence.  In short, Johnson does not deserve leniency from the Court when he has demonstrated no remorse for the loss of another human's life at his hands.

> **3.**     **The Need to Promote Respect for the Law, and the Need to Afford Adequate Deterrence**

A term of life imprisonment will promote respect for the law and ensure that Johnson never has the opportunity to commit another crime.  Such a term will also provide general deterrence to

others.  There is nothing in Johnson's submission or in the information he provided to Probation that warrants anything other than a Guidelines sentence.

Johnson asks for a sentence of 20 years' imprisonment, a significant deviation from the recommended Guidelines sentence.  Such a term of imprisonment would be a great injustice to Bernardo Garcia.  Neither Johnson nor society in general will be seriously deterred if the Court were to follow Johnson's recommendation and impose a sentence of 20 years' imprisonment.  On the other hand, a sentence of life imprisonment will prevent Johnson from harming another member of our society, in addition to punishing him for his crime.  A sentence of life imprisonment will also provide deterrence to other young men who may consider using guns to rob others.  The laws of the United States do not only protect law-abiding citizens.  Indeed, the fact that Bernardo Garcia was selling crack cocaine was the reason he was an attractive target to Johnson and his co-conspirators.  But Garcia did not deserve to die, and the facts of this case do not warrant a below-Guidelines sentence.

### 4.    The History and Characteristics of the Defendant

For many of the reasons discussed above, the history and characteristics of this defendant do not counsel in favor of a lenient sentence.  While Johnson does not have as extensive a criminal history as his co-conspirators, he appears to have been selling drugs since at least 2007.  Moreover, after Johnson murdered Garcia, it appears he remained undeterred and continued his criminal life.

### 5.    The Absence of Unwarranted Sentencing Disparities

It also bears noting that a Guidelines sentence in this case would not create "unwarranted disparities among defendants."  18 U.S.C. § 3553(a)(6).  While none of the participants in this case has been sentenced yet, all three of the convicted robbers face Guidelines sentences of life

imprisonment.  Johnson's role as the shooter makes him as culpable as any of his co-defendants.

Johnson's role in this offense makes a sentence of life imprisonment an appropriate and necessary

sentence in this case.

### IV. CONCLUSION

For the reasons set forth above, the Government respectfully submits that the Court should

impose a sentence of life imprisonment.

Dated:        New York, New York
              January 10, 2013

                                              Respectfully submitted,

                                              PREET BHARARA
                                              United States Attorney
                                              Southern District of New York

                              By:     ____s/_____
                                              Todd Blanche
                                              Nola B. Heller
                                              Assistant United States Attorneys
                                              (212) 637-2494/2631

**<u>Certificate of Service</u>**

I, Todd Blanche, declare that I am employed in the Office of the United States Attorney for the Southern District of New York, and on January 10, 2013, I caused a copy of the attached Sentencing Memorandum of the United States of America to be served by electronic notification to the following counsel:

> David Greenfield, Esq.
> 100 Lafayette Street
> New York, New York 10013

I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. Section 1746.

Dated:        New York, New York
             January 10, 2013

                                      ____/s_____
                                      Todd Blanche
                                      Assistant United States Attorney
                                      (212) 637-2494